**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT C. ABRAMS, JR., et al,<br><br>Plaintiffs<br><br>v.<br><br>CHESAPEAKE ENERGY CORPORATION, et al,<br><br>Defendants. | CIVIL ACTION NO. 4:16-CV-1346<br><br>(MEHALCHICK, J.) |
| KYLIE E. AHERN, et al,<br><br>Plaintiffs<br><br>v.<br><br>CHESAPEAKE ENERGY CORPORATION, et al,<br><br>Defendants. | CIVIL ACTION NO. 4:16-CV-1347<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court in these two cases are six motions to dismiss filed by Defendants Anadarko Petroleum Corporation, Anadarko E&P Onshore LLC ("Anadarko E&P") (together, the "Anadarko Defendants"), Mitsui E&P USA LLC ("MEPUSA"), Williams Partners, L.P., Access MLP Operating, L.L.P., and Appalachia Midstream Services, L.L.C. (the "Access Defendants", with the Anadarko Defendants and MEPUSA, "Defendants"). (Dkt. 4:16-CV-1346, Doc. 162, Doc. 164, Doc. 166; Dkt. 4:16-CV-1347, Doc. 163, Doc. 165, Doc. 167). These actions were originally filed by Plaintiffs (individually, "Abrams" and "Ahern") on June 28, 2016. (Dkt. 4:16-CV-1346, Doc. 1; Dkt. 4:16-CV-1347, Doc. 1). The

operative amended complaints were filed on January 30, 2017.[1] (Dkt. 4:16-CV-1346, Doc. 45; Dkt. 4:16-CV-1347, Doc. 46). For the following reasons, the motions to dismiss will be granted. (Dkt. 4:16-CV-1346, Doc. 162, Doc. 164, Doc. 166; Dkt. 4:16-CV-1347, Doc. 163, Doc. 165, Doc. 167).

---

[1] The named Plaintiffs in *Abrams et al v. Anadarko Petroleum Corporation, et al* are as follows: Robert C. Abrams, Jr., Sonya M. Abrams, James M. Allen, Theodore R. Babcock, Connie R. Babcock, Dale G. Bennett, Donna M. Bennett, Thomas E. Blanchard, Margaret K. Blanchard, William T. Bohensky, Jr., Laura G. Bohensky, Charles W. Brown, Jr., Jan Robert Brown, Marilyn H. Snyder Bryan, Thomas Bryan, John Burke, Ty C. Cobb, Cobblestone Camp, LLC, Jack C. Corbett, Janice M. Corbett, Kim R. Corbett, Debra C. Jones, Wayne M. Cummiskey, Andrae L. Cummiskey, Roberta F. Davis, Roberta Jean Pennay Dyer, Lyle R. Fenton, William David Gilbert, Jennifer Gilbert, Gary L. Hall, Joshua L. Hees, Tamara O. Hees, Raymond Henninger, Jr., Jeanne R. Heymann, Richard R. Higley, Charlotte L. Higley, Higley Tall Spruce LLC, JEMSCO Star, LLC, Edward S. Kalinowski, Lynn H. Kinch, Gail Kinch, Marjorie E. Snyder Kisner, Jesse Kisner, Anthony J. Latini, Melissa L. Latini, Latini Management, LLC, Michael J. McGroarty, Margaret M. McGroarty, Edward F. McKernan, Deborah H. McKernan, Joseph E. McKernan, Joseph T. McKernan, Earl C. Miller, Ann L. Miller, Randy L. Morse, Virginia K. Morse, Gary R. Norconk, Sharon M. Norconk, Linda L. Kisner (individually and trading as Norconk Family Limited Partnership), Kevin R. Potter, Donna E. Potter, Raymond J. Raffin, Mary Ann Raffin, April A. Rine, Jeffrey J. Rine, Joyce Ann Roche, Melvin E. Rohe, Jr., Michael B. Saxe (individually and trading Marcellus Five Family Limited Partnership), Thomas Schmeckenbecher (individually and trading Thomas Schmeckenbecher Family, LP), Scott R. Shores, Laura K. Shores, James Swingle, Jr., Susan Swingle, Betty J. Them, William W. Them, Towanda Country Club, Robert W. Watkins, Wickward Management, LLC (trading as Wickward Resources, LP), Gary Wickwire, Scott A. Wickwire (trading as Wickwire Family Limited Partnership), and Charles Will. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 49-101).

The named Plaintiffs in *Ahern et al v. Anadarko Petroleum Corporation, et al* are as follows: Kyle E. Perry, Matthew J. Ahern, Carol E. Babcock, Ryan L. Babcock, Robert Bruce Bach, Deborah Ann Bach, John R. Benscoter, Kristy L. Benscoter, William F. Driscoll, Edith J. Driscoll, Endless Mountains Land Management Inc., Ronald H. Herr, Erma R. Herr, RE Herr Enterprises LLC, Althem Family Limited Partnership, Phillip S. Hughes, Peggy J. Hughes, Donald F. Knolles, Dennis J. McCaig, Mary L. McCaig, W. Wayne Miller, Beverly J. Miller, Karen Robinson, Glenn P. Shores, Patti J. Shores, G & P Shores Family, LLC, Bradley L. Sink, Beatrice L. Sink, Sink Properties LLC, BB Sink Family Limited Partnership. Claire W. Thrush, Patricia A. Thrush, Robert H. Whipple, Anita G. Whipple, and Whipples Acres LLC (Dkt. 4:16-CV-1347, Doc. 45, ¶¶ 49-70).

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case arises from fracking activity in the Marcellus Shale area in Pennsylvania.[2] (Dkt. 4:16-CV-1346, Doc. 45; Dkt. 4:16-CV-1347, Doc. 46). Plaintiffs are a group of

---

[2] The following relevant background about fracking in Pennsylvania is taken from this case's counterpart *Suessenbach Fam. Ltd. P'ship v. Access Midstream Partners, L.P.*:

> Fracking enables the production of natural gas and oil from rock formations below the earth's surface, generally 5,000 to 20,000 feet. At such depth, there may not be sufficient permeability or reservoir pressure to allow natural gas and oil to flow from the rock into the wellbore at economic rates. Given the extremely low natural permeability of shale, creating fractures in the rock is critical to extract gas from shale reservoirs.
>
> Large deposits of natural gas have been discovered in various shale deposits throughout the United States, including in Pennsylvania, and several oil and gas exploration and development companies have been actively accessing these deposits due to the development of fracking technology that allows the deposits to be exploited. The Marcellus Shale formation located in and beyond Pennsylvania is one of the largest natural gas reserves in the world. Plaintiffs' lands are located in the Marcellus Shale.
>
> Gaining access to the deposits in the shale regions, including the Marcellus Shale, typically involves purchasing or leasing land or mineral rights in the vicinity of suspected deposits and attempting to develop profitable wells. Once a natural gas deposit is reached, a wellhead is placed on the deposit. After a wellhead is in place, natural gas can be moved from the well through gathering pipes and ultimately transported through an intrastate transmission pipeline. Intrastate transmission pipelines connect to major interstate transmission pipelines which transport natural gas throughout the United States. The transport and processing steps which follow removal of natural gas from the wellhead, but precede entry of the gas into an interstate transmission pipeline, are sometimes referred to as "gathering." Access Midstream operates between the lessors at the wellhead and the interstate pipeline system.
>
> Processing can also include certain services to make gas suitable for entry into the interstate pipeline system, such as dehydration when the natural gas has a high water content. Access Midstream as indicated, however, "[i]n general, the natural gas in the northern Marcellus Shale is lean and typically requires little to no treatment to remove contaminants."
>
> While federal rules limit fees that can be charged on the interstate pipelines to prevent gouging, drilling companies levy fees on local pipelines, known as gathering lines. However, even where such fees are deducted, they must be

individuals who hold royalty interests under oil and gas leases in properties generally located above the Marcellus Shale. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 1; Dkt. 4:16-CV-1347, Doc. 46, ¶ 1). In the aggregate, Plaintiffs hold royalty interests in the natural gas produced from over 8,250 acres of leasehold land. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 1 n.1; Dkt. 4:16-CV-1347, Doc. 46, ¶ 1 n.1). In *Abrams*, Anadarko E&P holds rights in Plaintiffs' leases, either as the original lessee party or as assignee or successor. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 2). In *Ahern*, non-party Chesapeake Appalachia, L.L.C. ("CALLC") also holds rights in Plaintiffs' leases, under which they hold their respective royalty interests, as the direct or indirect assignee of the original lessee. (Dkt. 4:16-CV-1347, Doc. 46, ¶ 2).

Plaintiffs allege that Defendants conspired "to reduce, restrain or eliminate competition" and "to defraud Plaintiffs and enrich themselves by deducting from Plaintiffs' royalty payments," (Dkt. 4:16-CV-1346, Doc. 45, ¶ 6; Dkt. 4:16-CV-1347, Doc. 46, ¶ 6). Further, Plaintiffs allege that through an agreement among Defendants to jointly develop natural gas wells and gathering systems in and around the Marcellus Shale, Defendants have engaged in an unlawful, anti-competitive scheme. (Dkt. 4:16-CV-1346, Doc. 45, at 12; Dkt. 4:16-CV-1347, Doc. 46, at 10). This scheme is allegedly intended to "allocate geographic markets for the acquisition of gas mineral rights and operating rights[.]" (Dkt. 4:16-CV-1346, Doc. 45, at 12; Dkt. 4:16-CV-1347, Doc. 46, at 10). The scheme also allegedly permits Defendants to charge "supra competitive" fees for gathering services at the wells on property leased by Plaintiffs. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 20; Dkt. 4:16-CV-1347, Doc. 46, ¶ 20). In effect, the scheme allegedly allows Defendants to defraud Plaintiffs of its royalties "by the

---

reasonable and actual. No. CIV.A. 3:14-1197, 2015 WL 1470863, at *2-3 (M.D. Pa. Mar. 31, 2015).

misrepresentation of unauthorized or artificially inflated deductions[.]" (Dkt. 4:16-CV-1346, Doc. 45, ¶ 23; Dkt. 4:16-CV-1347, Doc. 46, ¶ 23).

On June 28, 2016, Plaintiffs commenced these two actions, respectively. (Dkt. 4:16-CV-1346, Doc. 1; Dkt. 4:16-CV-1347, Doc. 1). On January 30, 2017, Plaintiffs filed the instant amended complaints. (Dkt. 4:16-CV-1346, Doc. 45; Dkt. 4:16-CV-1347, Doc. 46). On October 21, 2025, the matters were reassigned to the undersigned. (Dkt. 4:16-CV-1346, Doc. 147; Dkt. 4:16-CV-1347, Doc. 148). In both complaints, Plaintiffs allege the following causes of action: First Cause of Action – Agreement to Restrain Competition in Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Second Cause of Action – Combination or Conspiracy to Monopolize Trade or Commerce in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; Third Cause of Action – Violation of RICO, 18 U.S.C. §§ 1961-1968; Fourth Cause of Action – Conspiracy to Violate RICO, 18 U.S.C. § 1962(d); Fifth Cause of Action – Conversion; Sixth Cause of Action – Civil Conspiracy; Seventh Cause of Action – Breach of Contract; Eighth Cause of Action – Action for Accounting; Ninth Cause of Action – Declaratory Judgment (*Abrams*); Ninth Cause of Action – Unjust Enrichment (*Ahern*); and Tenth Cause of Action (*Abrams*). (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 215-376; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 190-339). As relief, Plaintiffs seek monetary, compensatory, and punitive damages. (Dkt. 4:16-CV-1346, Doc. 45, at 146-49; Dkt. 4:16-CV-1347, Doc. 46, at 126-29). Anadarko Defendants, MEPUSA, and Access Defendants each filed a motion to dismiss Plaintiffs' amended complaint as well as a brief in support of their respective motions. (Dkt. 4:16-CV-1346, Doc. 162, 164, 165, 166, 167, 168; Dkt. 4:16-CV-1347, Doc. 163, Doc. 165, Doc. 166, Doc. 167, Doc. 168, Doc. 169).

## II. LEGAL STANDARD

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt* v. President of the U.S., 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III. Discussion

### A. Sherman Act Anti-Trust Claims

Plaintiffs allege that Defendants violated the Sherman Act by engaging in a conspiracy to restrain competition and monopolize trade. (Dkt. 4:16-CV-1346, Doc. 45, at 96, 107; Dkt. 4:16-CV-1347, Doc. 46, at 80, 92). "The purpose of the Sherman Act is to protect buyers and sellers from the effects of seller or buyer 'market power' unless obtained by competition on the merits." *Abrams v. Chesapeake Energy Corp.*, No. 4:16-CV-1343, 2017 WL 6541511, at *6 (M.D. Pa. Dec. 21, 2017). Plaintiffs brings claims under both Section 1 and Section 2 of the Sherman Act, which "prohibit agreements that unreasonably restrain competition, and prohibit monopolization, attempted monopolization, and conspiracies to monopolize,

respectively." *Abrams*, 2017 WL 6541511, at *6. Defendants argue that A&B lacks standing to bring its Sherman Act claims and that A&B fails to sufficiently plead the necessary elements under Section 1 and Section 2 of the Sherman Act. (Dkt. 4:16-CV-1346, Doc. 168, at 16-21; Dkt. 4:16-CV-1346, Doc. 165, at 11-21; Dkt. 4:16-CV-1346, Doc. 167, at 17-23; Dkt. 4:16-CV-1347, Doc. 169, at 16-21; Dkt. 4:16-CV-1347, Doc. 166, at 11-18; Dkt. 4:16-CV-1347, Doc. 168, at 17-23).

**1. Plaintiffs lack standing to bring its antitrust claims.**

Defendants argue that Plaintiffs lacks standing to bring its antitrust claims because Plaintiffs were not injured in a manner consistent with the protections of the Sherman Act. (Dkt. 4:16-CV-1346, Doc. 168, at 16-18; Dkt. 4:16-CV-1346, Doc. 165, at 14-15; Dkt. 4:16-CV-1346, Doc. 167, at 17-19; Dkt. 4:16-CV-1347, Doc. 169, at 16-18; Dkt. 4:16-CV-1347, Doc. 166, at 12-14; Dkt. 4:16-CV-1347, Doc. 168, at 17-20). In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983), the United States Supreme Court detailed factors to be considered when determining whether a plaintiff has antitrust standing. These factors are as follows:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.
>
> *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165–66 (3d Cir. 1993); *see Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223 (3d Cir. 2013).

The threshold element of antitrust standing is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). This requirement ensures that antitrust laws are enforced "for the protection of competition, not competitors." *Brunswick Corp.*, 429 U.S. at 488. Accordingly, antitrust standing is limited to consumers and competitors in the relevant market, and to those whose injuries are "inextricably intertwined" with the alleged antitrust agreement or conspiracy. *Ethypharm*, 707 F.3d at 233. Per the Third Circuit, the "inextricably intertwined" exception requires the alleged injury to be the means by which a defendant achieves anti-competitive ends and may be extended only to entities that are in the business of selling goods and services in the same market. *See Ethypharm*, 707 F.3d at 237 (citing *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 320-21 (3d Cir. 2007)). Furthermore, "[a]n antitrust plaintiff must allege not only personal harm, but also that the defendant's conduct affected the 'prices, quantity or quality of goods or services' in the relevant market." *Premier Comp Sols. LLC v. UPMC*, 377 F. Supp. 3d 506, 531 (W.D. Pa. 2019)*;* *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (citing *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d at 728); *see also Eichorn v. AT & T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001) ("[T]he antitrust laws were designed to protect market-wide anticompetitive activities"). The ensuing injury must result from the competition-reducing effect of the defendant's behavior.

According to Anadarko Defendants, Plaintiffs fail to plead that their alleged injury is the result of anticompetitive violations and fail to show that they are proper antitrust plaintiffs. (Dkt. 4:16-CV-1346, Doc. 168, at 16-18; Dkt. 4:16-CV-1347, Doc. 169, at 16-18). MEPUSA argues that, rather than alleging any wrongful reduction in competition, Plaintiffs allege harm to themselves. (Dkt. 4:16-CV-1346, Doc. 165, at 13; Dkt. 4:16-CV-1347, Doc. 166, at 12). Access Defendants, like Anadarko Defendants, aver that "Plaintiffs fail to plead that their

alleged injury 'reflects the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'" (Dkt. 4:16-CV-1346, Doc. 167, at 18; Dkt. 4:16-CV-1347, Doc. 168, at 18). Plaintiffs argue that they have alleged themselves as prospective participants in the market, rendering them subject to Defendants' anticompetitive activity. (Dkt. 4:16-CV-1346, Doc. 173, at 11; Dkt. 4:16-CV-1346, Doc. 174, at 13; Dkt. 4:16-CV-1347, Doc. 176, at 11; Dkt. 4:16-CV-1347, Doc. 177, at 13).

Antitrust injury is an essential element to antitrust standing. *See SEI Glob. Servs., Inc. v. SS&C Advent,* No. 20-3386, 2022 WL 2356730, at *2 (3d Cir. June 30, 2022) (recognizing antitrust injury the "threshold" for antitrust standing). "An antitrust plaintiff is only required to 'allege facts capable of supporting a finding or inference that the purported anticompetitive conduct produced'" the purported harm. *CarePoint Health Sys. Inc. v. RWJ Barnabas Health, Inc.*, No. 22CV5421 (EP) (CLW), 2023 WL 7986429, at *5 (D.N.J. Nov. 17, 2023) (quoting *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 577 (E.D. Pa. 2018)). However, Plaintiffs fail to meet their burden of establishing an antitrust injury.

First, the amended complaint does not allege sufficient facts supporting that there was a reduction in competition stemming from Plaintiffs' alleged injury. *See SS&C Advent*, 2022 WL 2356730, at *2 (stating an antitrust injury must flow from "anti-competitive effect on the competitive market" in the relevant market). Instead, Plaintiffs only allege harm to themselves through the underpayment of royalties. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 238; Dkt. 4:16-CV-1347, Doc. 46, ¶ 214); *see AlphaCard Sys. LLC v. Fery LLC*, No. CV1920110ZNQTJB, 2023 WL 3506414, at *4 (D.N.J. May 17, 2023) (dismissing antitrust claims because plaintiff failed to allege harm to competition, alleging only harm unto itself); *see also Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1125 (10th Cir. 2005) (finding the alleged injury of

underpayment of royalties to be insufficient to confer antitrust standing). Also, Plaintiffs fail to allege that the market for Gathering Services became less competitive as a result of the complaint of activities, alleging instead that CALLC merely transferred its monopoly power and that competitive fees were already charged in the market for Gathering Services before the alleged of agreements. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 19-20, 204, 227-28; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 19-20, 173, 203-04). A shift in a monopoly does not automatically establish a change in the market, especially whereas here Plaintiffs fail to allege specific ways in which Defendants "bolstered and extended" their monopoly power beyond their conclusory allegation stating as much. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 229-30; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 206-07); *see, e.g.*, *Columbia River People's Util. Dist. v. Portland Gen. Elec. Co.*, 217 F.3d 1187, 1190-91 (9th Cir. 2000) (recognizing that the same permissible constraints will exist whether the monopoly is held by one party or another); *see also, e.g.*, *Hasu Shah v. Harristown Dev. Corp.*, No. 1:12-CV-2196, 2013 WL 6567764, at *8 (M.D. Pa. Dec. 13, 2013) ("The court agrees with defendants [] that an existing monopoly's change of ownership is not, by itself, an antitrust violation."). Furthermore, because Plaintiffs allege that Defendants "enabled themselves" to "cause Plaintiffs to receive below-market royalties as a result of the deduction of unauthorized and/or artificially inflated costs from their royalties." (Dkt. 4:16-CV-1346, Doc. 45, ¶ 221; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 196-97). Thus, the Court cannot surmise that Plaintiffs' alleged injury of decreased royalties was caused by the unlawful exercise of market power by Defendants. *See SS&C Advent*, 2022 WL 2356730, at *2 (affirming the dismissal of antitrust claims where plaintiff had "not alleged that harm flows from any purported anticompetitive conduct by" defendants).

Further, Plaintiffs are not the proper parties to bring an antitrust action because they are neither consumers nor competitors in the alleged relevant markets. *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85 (3d Cir. 2010) (Antitrust injury is limited to "consumers and competitors in the restrained market."). Whereas Plaintiffs may play an upstream role in the market for gas minerals rights, their tangential relationship to the relevant market is insufficient to confer standing. *SigmaPharm, Inc. v. Mut. Pharm.* Co., 454 F. App'x 64, 69 (3d Cir. 2011) (concluding that even though plaintiff provided a crucial input in the relevant market, it was not within the class of parties with antitrust standing). Plaintiffs attempt to plead around this conclusion by alleging in a conclusory fashion that their injury is "inexplicably intertwined" with Defendants' alleged wrongdoing. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 221, 233-34; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 196, 209-10). The Third Circuit has extended antitrust standing to instances where "'both plaintiffs and defendants are in the business of selling goods or services in the same relevant market,' though they may not directly compete against each other." *Ethypharm*, 707 F.3d at 237; *see also Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015) ("suppliers and other non-market participants generally do not have antitrust standing unless their injuries were the very means by which the defendants carried out their illegal ends"). Standing exists under the inextricably intertwined exception where the alleged injury is a "necessary step in effecting the ends of the alleged illegal conspiracy." *Blue Shield v. McCready*, 457 U.S. 465, 476-79, 484 (1982) (emphasis added). Here, however, based on the allegations in the amended complaint, that is not the case. Plaintiffs' allegations do not support their conclusion that they and Defendants are buyers and sellers in the same market and Plaintiffs do not direct the Court to any caselaw that suggests otherwise. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 321 (3d Cir. 2007).

The Court is, therefore, not convinced that Plaintiffs' alleged injury is inextricably intertwined with Defendants' alleged anticompetitive scheme. Plaintiffs fail to sufficiently allege antitrust standing at this juncture. Accordingly, Defendants' motions to dismiss are **GRANTED** as to Plaintiffs' antitrust claims, the First and Second Causes of Action, which are hereby **DISMISSED**. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 215-53; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 190-229).

**2. Plaintiffs fail to allege an anti-competitive agreement among all Defendants.**

Even if Plaintiffs had standing to assert their Sherman Act claims against Defendants, their claims would fail as insufficiently pled. According to Defendants, Plaintiffs' amended complaint lacks factual allegations that an agreement to reduce competition in the relevant markets existed. (Dkt. 4:16-CV-1346, Doc. 168, at 20; Dkt. 4:16-CV-1346, Doc. 165, at 20; Dkt. 4:16-CV-1346, Doc. 167, at 22; Dkt. 4:16-CV-1347, Doc. 169, at 20; Dkt. 4:16-CV-1347, Doc. 166, at 17; Dkt. 4:16-CV-1347, Doc. 168, at 22). To assert a claim under Section 1 of the Sherman Act, Plaintiffs must allege Defendants engaged in a "contract, combination. . . or conspiracy, in restraint of trade or commerce." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). This requires a showing of Defendants making a conscious commitment to a common scheme. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).

The Court must determine whether the alleged anticompetitive conduct was the result of an agreement among Defendants or each of their independent choices. *Twombly*, 550 U.S. at 553; *see Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010) ("Section 1 claims are limited to combinations, contracts, and conspiracies, and thus always require the existence of an agreement."). Conduct that is "entirely consistent" with the defendant pursuing its own economic interests does not support an inference of conspiracy.

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 368 (M.D. Pa. 2008); *see also Twombly*, 550 U.S. at 567 (allegations of conspiracy are deficient if there are "obvious alternative explanation[s]" for the facts alleged). "While a showing of parallel 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement,' it [also] falls short of 'conclusively establish[ing] agreement or ... itself constitut[ing] a Sherman Act offense.'" *Twombly*, 550 U.S. at 553 (citing *Theatre Enterprises, Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (2007)); *see also See Valspar Corp. v. E.I. Du Pont De Nemours and Company*, 873 F.3d 185, 190-91 (3d Cir. 2017) ("single firm's independent action…does not implicate § 1"). Even conscious parallelism falls short of what is required to establish a Sherman Act violation. *Twombly*, 550 U.S. at 553. To establish an unlawful anticompetitive conspiracy, Plaintiffs must demonstrate that an "actual, manifest agreement" exists between Defendants. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 361 (3d Cir. 2004); *see also Kerwin v. Casino*, 802 F. App'x 723, 725-26 (3d Cir. 2020) (dismissing claim where, among other things, plaintiff failed to plead facts "specify[ing] a time or place that any actual agreement . . . occurred" or identifying the "particular individuals or organizations [that] made such an agreement") (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (cleaned up). Plaintiffs' "agreement" claim must include factual allegations with respect to each defendant named in the complaint. *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011).

In their amended complaint, Plaintiffs point to several agreements made by various groupings of Defendants over a period of time to support a larger conspiracy. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 126, 132-33; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 95, 101-02). However, Plaintiffs offer neither factual allegations nor persuasive arguments supporting their

conclusion that all Defendants, acting in concert, had an agreement to restrain trade in violation of the Sherman Act. (Dkt. 4:16-CV-1346, Doc. 173, at 19-21; Dkt. 4:16-CV-1346, Doc. 174, at 21-23; Dkt. 4:16-CV-1347, Doc. 176, at 19-21; Dkt. 4:16-CV-1347, Doc. 177, at 21-23). To meet their burden, Plaintiffs must allege facts that support Defendants shared "a unity of purpose." *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004). The amended complaint does not support that each Defendant was even aware of each other's conduct, never mind had a unity purpose. Instead, at most Plaintiffs have alleged parallel conduct "entirely consistent" with each Defendant pursuing its own interests by underpaying Plaintiffs' royalties by deducting post-production costs. *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363 (M.D. Pa. 2008). Furthermore, this parallel conduct of deducting post-production costs has been upheld as permissible by the Pennsylvania Supreme Court. *Kilmer v. Elexco Land Servs., Inc.*, 990 A.2d 1147, 1149 (Pa. 2010). Accordingly, because Plaintiffs do not allege Defendants participated in an anticompetitive agreement, Defendants' motions to dismiss are **GRANTED** on this basis. (Dkt. 4:16-CV-1346, Doc. 162, Doc. 164, Doc. 166; Dkt. 4:16-CV-1347, Doc. 163, Doc. 165, Doc. 167). Even "under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants. . . An allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim." *Bret Binder v. Weststar Mortg., Inc.*, No. CV 14-7073, 2016 WL 3762710, at *3 (E.D. Pa. July 13, 2016) (citation omitted). Accordingly, Plaintiffs' First and Second Causes of Action are **DISMISSED**. *See Ellison v. Am. Bd. of Orthopaedic Surgery, Inc.*, No. CV168441KMJBC, 2018 WL 6629764, at *5 (D.N.J. Oct. 30, 2018) (dismissing Section 1 claims because plaintiff failed to allege an unlawful agreement).

B. RICO CLAIMS

Plaintiffs also allege that Defendants violated RICO. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 254-98; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 230-74). Specifically, Plaintiffs claim that Defendants were part of a RICO enterprise designed to lead individuals "into believing that the deductions for post-production costs reflected in the opaque and confusing royalty statements" that were issued to Plaintiffs. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 259; Dkt. 4:16-CV-1347, Doc. 46, ¶ 235). Under RICO, it is unlawful "for any person employed by or associated with any enterprise engage in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962; *see Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 Fed. Appx. 811, 816–817 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). To state a claim for a RICO violation, Plaintiffs must allege that Defendants are (1) a person (2) who is associated with an enterprise engaged in interstate commerce (3) who conducted the affairs of said enterprise (4) through a pattern (5) of racketeering activity. *Dongelewicz*, 104 Fed. Appx. at 816–817.

Here, Plaintiffs allege the predicate racketeering activity is mail and wire fraud. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 266; Dkt. 4:16-CV-1347, Doc. 46, ¶ 242). "Racketeering activity" includes mail and wire fraud as defined by 18 U.S.C. §§ 1341 and 1343. *See* 18 U.S.C. § 1961(1). To establish a claim for mail or wire fraud, a plaintiff must allege: "(1) a scheme to defraud; (2) the use of the mails or wires for the purpose of executing the scheme; and (3) fraudulent intent." *Rapid Circuits, Inc. v. Sun Nat. Bank*, No. 10-6401, 2011 WL 1666919, at *23 (E.D. Pa. May 3, 2011) (citing *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir. 2002)); *see also Katz v. DeLuca*, No. CV 23-1188, 2024 WL 2188905, at *5 (E.D. Pa. May 15, 2024).

"When mail and wire fraud are the alleged predicate acts of a RICO violation, 'they must be pled with particularity to satisfy Federal Rule of Civil Procedure 9(b); in particular, blanket allegations of mail and wire fraud lacking information of who sent or received the fraudulent representations are insufficient to satisfy Rule 9(b).'" *DeLuca*, 2024 WL 2188905, at *5 (quoting *Rapid Circuits, Inc.* 2011 WL 1666919, at *23). Additionally, RICO makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962. Pursuant to this section, Plaintiffs have also asserted a RICO conspiracy claim against Defendants. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 299-309; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 275-85). Defendants argue that Plaintiffs' RICO claims should be dismissed because they fail to allege Defendants engaged in a RICO enterprise, fail to allege a pattern of racketeering activity, and fail to allege RICO conspiracy.[3] (Dkt. 4:16-CV-1346, Doc. 168, at 21-25; Dkt. 4:16-CV-1346, Doc. 167, at 23-30; Dkt. 4:16-CV-1347, Doc. 169, at 21-25; Dkt. 4:16-CV-1347, Doc. 168, at 23-30).

**1. Plaintiffs fail to allege an association-in-fact RICO enterprise.**

For RICO purposes, "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[T]he 'enterprise' cannot be the pattern of racketeering activity alone and must be 'an entity separate and apart from the pattern of activity in which it engages.'" *Zakheim v. Curb Mobility LLC*, No. CV 22-4594, 2023 WL 5339606, at *2 (E.D. Pa. Aug. 18, 2023) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). There are two categories of associations that constitute a RICO enterprise:

---

[3] MEPUSA does not address RICO claims in its briefs. (Dkt. 4:16-CV-1346, Doc. 165; Dkt. 4:16-CV-1347, Doc. 166).

(1) legal entities such as corporations and partnerships, and (2) associations-in-fact. *See Ins. Brokerage Litig.*, 618 F.3d at 364 (citing *United States v. Turkette,* 452 U.S. 576, 581-52 (1981)).

Plaintiffs assert that Defendants, along with their respective officers, directors, employees and agents, formed an association-in-fact enterprise. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 257-59; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 233-35). In an association-in-fact enterprise, entities act together "for a common purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Therefore, an association-in-fact must share "(1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle,* 556 U.S. at 946; *see also Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.*, 374 F. Supp. 3d 361, 373 (E.D. Pa. 2019).

"The Third Circuit has made clear that normal business relationships, without more, are insufficient to support an association-in-fact enterprise." *Zakheim*, 2023 WL 5339606, at *3. Plaintiffs must allege that Defendants are "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. Here, Plaintiffs have not directed the Court to any allegations containing "descriptive details about the relationships between members of the enterprise." *Zakheim*, 2023 WL 5339606, at *1, 3 (discussing the dismissal of RICO claims because plaintiff had failed to allege a common purpose among defendants and stating "requires pleading some descriptive details about the relationships between members of the enterprise."). Specifically, Plaintiffs have not alleged that each Defendant knowingly agreed to participate together in an enterprise intended to defraud Plaintiffs. Instead, Plaintiffs rely on conclusory allegations that each Defendant "agreed to, and did, participate in the conduct of the Enterprise, and carried out its role using broad and independent discretion." (Dkt. 4:16-CV-1346, Doc. 45, ¶ 258; Dkt. 4:16-CV-1347, Doc. 46, ¶ 234); *Zakheim*, 2023 WL

5339606, at *3. Thus, Plaintiffs fail to allege a RICO enterprise. (Dkt. 4:16-CV-1346, Doc. 45; Dkt. 4:16-CV-1347, Doc. 46).

Similarly, Plaintiffs also fail to satisfy the predicates set out in *Boyle v. United States*. 556 U.S. at 946. While Plaintiffs allege the enterprise's purpose "of concealing and disguising" facts regarding royalty statements, Plaintiffs fail to allege a relationship among all Defendants to perpetuate this purpose. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 259; Dkt. 4:16-CV-1347, Doc. 46, ¶ 235); *Boyle*, 556 U.S. at 946. Although the amended complaint alleges independent and varied conduct by the Defendants, there are no factual allegations supporting global, coordinated, and unified activity among all the Defendants beyond Plaintiffs' conclusory allegations that such activity occurred. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (dismissing RICO claim where plaintiffs failed to allege how the members of the association-in-fact "came to an agreement to act together"). Plaintiffs' allegations of Defendants' individual conduct is not sufficient to establish all Defendants acted in concert. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010).

The amended complaint does not contain allegations that demonstrate Defendants "understood the essential nature of the plan and knowingly agreed to participate in the plan." *Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395, 405 (E.D. Pa. 2013). "Simply identifying the allegedly associated components does not serve to put defendants on notice of the RICO claim." *In re Ins. Brokerage*, 618 F.3d at 369. Defendants' motions to dismiss are thereby **GRANTED** as to Plaintiffs' RICO claim. (Dkt. 4:16-CV-1346, Doc. 162; Dkt. 4:16-CV-1346, Doc. 166; Dkt. 4:16-CV-1347, Doc. 163; Dkt. 4:16-CV-1347, Doc. 167). Accordingly, Plaintiffs fail to allege the enterprise factor of their Third Cause of Action, their RICO claim,

which is **DISMISSED** on this basis.[4] (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 254-98; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 230-74); *see Kingfly Spirits, LLC v. Ragghianti*, No. CV 22-50E, 2023 WL 6214262, at *3 (W.D. Pa. Sept. 25, 2023) (dismissing RICO claim where it was "bereft of connective tissue plausibly establishing an 'enterprise structure' tying together the various actors").

**2. Plaintiffs' RICO Conspiracy Claim fails.**

Plaintiffs also assert a RICO conspiracy claim against Defendants. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 299-309; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 275-85). RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. §1962(d). To plead a conspiracy to violate § 1962(c), a plaintiff must allege "(1) knowledge of the corrupt enterprise's activities and (2) agreement to facilitate those activities." *Smith v. Berg*, 247 F.3d 532, 535 (3d Cir. 2001) (citing *Salinas v. United States*, 522 U.S. 52, 66 (1997)). Liability for a RICO conspiracy "will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Berg*, 247 F.3d at 538. RICO conspiracy claims are subject to Fed. R. Civ. P. 8(a)'s pleading

[4] Plaintiffs allege mail and wire fraud to be the predicate racketeering activity. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 266; Dkt. 4:16-CV-1347, Doc. 46, ¶ 242). Specifically, Plaintiffs allege "Defendants engaged in an intentional scheme or artifice to defraud Plaintiffs and other owners of royalty interests under oil and gas leases with the Lessee Defendants, in order to obtain their money or property through false or fraudulent pretenses, representations or promises." (Dkt. 4:16-CV-1346, Doc. 45, ¶ 266; Dkt. 4:16-CV-1347, Doc. 46, ¶ 242). Anadarko Defendants and Access Defendants argue that Plaintiffs' RICO claim fails also because they do not state their predicate claims with particularity, as required under Rule 9. (Dkt. 4:16-CV-1346, Doc. 168, at 22; Dkt. 4:16-CV-1346, Doc. 167, at 23; Dkt. 4:16-CV-1347, Doc. 169, at 22; Dkt. 4:16-CV-1347, Doc. 168, at 23). MEPUSA does not address Plaintiffs' RICO claim. (Dkt. 4:16-CV-1346, Doc. 164, at 2 n.1; Dkt. 4:16-CV-1347, Doc. 165, at 2 n.1).

standards, not the heightened standard of Rule 9(b). *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

"Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1191 (3d Cir. 1993). Accordingly, because Plaintiffs' underlying RICO claim is dismissed, the Court is compelled to **GRANT** Defendants' motions as to Plaintiffs' RICO conspiracy claim. (Dkt. 4:16-CV-1346, Doc. 162; Dkt. 4:16-CV-1346, Doc. 166; Dkt. 4:16-CV-1347, Doc. 163; Dkt. 4:16-CV-1347, Doc. 167)*; see Lightning Lube, Inc.,* 4 F.3d at 1191; *see also McLaughlin v. Int'l Bhd. Of Teamsters, Loc. 249*, 641 F. Supp. 3d 177, 201 (W.D. Pa. 2022). Plaintiffs' RICO conspiracy claim, their Fourth Cause of Action, is therefore **DISMISSED**. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 299-309; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 275-85); see *Zakheim*, 2023 WL 5339606, at *4 ("Because I find that Plaintiffs have sufficiently pleaded a claim under Section 1962(c), I will also deny Defendant's Motion as to Plaintiffs' conspiracy claim under Section 1964(d).").

C. <u>STATE LAW CLAIMS</u>

Plaintiffs assert state law claims against Defendants for conversion, civil conspiracy, breach of contract, accounting, and unjust enrichment.[5] (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 310-53, 373-76; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 286-339). Plaintiffs' state law claims are premised on their allegation that the Anadarko Defendants and MEPUSA (collectively, "Lessee

[5] Plaintiffs in *Abrams* sought declaratory judgment against Defendants, their Ninth Cause of Action. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 354-72). The motion regarding this claim were resolved in favor of Defendants, and the Court dismissed Plaintiffs' claims subject to arbitration. (Dkt. 4:16-CV-1346, Doc. 81). Plaintiffs represented to the Court that their motion for reconsideration of the decision regarding arbitration is moot. (Dkt. 4:16-CV-1346, Doc. 152).

Defendants") improperly deducted post-production costs when calculating the amount of royalties that were to be paid to the Plaintiffs or, alternatively, that the Lessee Defendants charged Plaintiffs with "arbitrary, excessive and unreasonable deductions." (Dkt. 4:16-CV-1346, Doc. 45, ¶ 324; Dkt. 4:16-CV-1347, Doc. 46, ¶ 300) Defendants argue that each of Plaintiffs' state law claims should be dismissed for failure to state a claim. For the following reasons, the Court agrees.

**1. Plaintiffs' Breach of Contract claim fails as a matter of law.**

Plaintiffs allege that under the terms of their leases, the Defendants are not entitled to deduct post-production costs in calculating the royalties payable to Plaintiffs and thus breached their obligations under the leases by deducting such costs. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 343; Dkt. 4:16-CV-1347, Doc. 46, ¶ 323). Defendants aver that, as a matter of Pennsylvania law, there is no cause of action for these alleged post-production deductions. (Dkt. 4:16-CV-1346, Doc. 168, at 25- 30; Dkt. 4:16-CV-1347, Doc. 165, at 21-26; Dkt. 4:16-CV-1347, Doc. 169, at 25-30; Dkt. 4:16-CV-1347, Doc. 166, at 18-24).

To state a breach of contract claim under Pennsylvania law, a plaintiff must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 255 (3d Cir.2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); *Gottselig v. Energy Corp. of Am.*, No. CIV.A. 15-971, 2015 WL 5820771, at *6 (W.D. Pa. Oct. 5, 2015). The general principles of contract interpretation govern oil and gas leases. *Smith v. Steckman Ridge, LP*, 2014 WL 1278120, at *4 (W.D. Pa. March 27, 2014); *Gottselig*, 2015 WL 5820771, at *6. Here, the parties dispute whether Lessee Defendants breached their obligations under the terms of Plaintiffs' leases by deducting post-production costs from royalties payable to

Plaintiffs. In accordance with Pennsylvania Supreme Court precedent, the Court finds that, per the allegations in the amended complaint, Lessee Defendants have not breached their obligations in the applicable leases and Plaintiffs' breach of contract claim is dismissed.

The Court turns to that *Kilmer v. Elexco Land Services* in this part of the discussion. 990 A.2d 1147, 1149, 1157-58 (Pa. 2010). In *Kilmer*, the Pennsylvania Supreme Court found that lessee gas producers may deduct their post-production costs from royalty payments under an "at the wellhead" lease provision like the ones at bar, which permits the "net-back" method to determine deductions. 990 A.2d at 1149, 1157-58. Courts have interpreted this holding broadly. *Slamon v. Carrizo (Marcellus) LLC*, 654 F. Supp. 3d 405, 435 (M.D. Pa. 2023); *see also Ulmer v. Chesapeake Appalachia*, LLC, No. 4:08-CV-2062, 2011 WL 1344596, at *3 ("it is our considered view that *Kilmer* was not meant to be read narrowly, and thus we find that the deduction of post-production costs contained in the lease sub judice is a permissible use of the net-back method under the GMRA"). Applying *Kilmer*, federal courts have dismissed breach of contract claims premised on producers deducting post-production costs from their royalty payouts. *See Ulmer,* 2011 WL 1344596, at *2 ("The holding of *Kilmer* is that the GMRA permits the calculation of the royalties at the wellhead utilizing the net-back method. That is exactly what the leases here provide, and as a result, we decline to void them"); *see also Pollock v. Energy Corp. of Am.*, No. CIV.A. 10-1553, 2011 WL 3667289, at *5 (W.D. Pa. June 27, 2011), *report and recommendation adopted*, No. CIV.A. 10-1553, 2011 WL 3667385 (W.D. Pa. Aug. 22, 2011) (adopting a Magistrate Judge's recommendation that defendants' motion to dismiss a breach of contract claim where the relevant oil and gas leases the leases contemplate calculation of royalties by the net-back method.).

Here, it is apparent from the allegations in the *Abrams* amended complaint the Plaintiffs' leases entitled them to royalties based on the market value of the gas at the well using the netback method. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 150). Specifically, the applicable lease provision states:

> The LESSEE covenants and agrees as follows: 1st – LESSEE … shall pay the LESSOR on gas … produced from the premises and used off the premises or lands pooled therewith or in the manufacture of gasoline, or other products therefrom, or sold (whether to an affiliated or non-affiliated purchaser) the market value at the well of one-eighth (1/8th) of the gas so used or sold. In no event shall the gas royalty payable hereunder be computed on the basis of a price the collection of which by LESSEE is unlawful or prohibited by order or regulation of any governmental authority having jurisdiction, and market value at the well *shall not exceed the amount realized by LESSEE for such production computed at the well*…. LESSEE may pay all taxes and fees levied upon LESSOR's royalty share of production of oil and gas and deduct the amount so paid from any monies payable to LESSOR hereunder….

(Dkt. 4:16-CV-1346, Doc. 45, ¶ 150) (emphasis added).

Courts have recognized the "generally accepted industry-specific use of the term 'at the wellhead'" as an industry specific, technical term that should be construed as much. *Coastal Forest Res. Co. v. Chevron U.S.A., Inc.*, No. 2:20-CV-1119, 2021 WL 1894596, at *4 (W.D. Pa. May 11, 2021). The language at bar includes language that other courts, such as the Western District of Pennsylvania, have found "expressly and unequivocally call for the calculation of royalties 'at the wellhead.'" (Dkt. 4:16-CV-1346, Doc. 45, ¶ 150); *Coastal Forest*, 2021 WL 1894596, at *6. Courts have found that this language requires that contract "be interpreted as permitting the net-back method" and therefore as permissive of deducting post-production costs from royalty payments. *Coastal Forest*, 2021 WL 1894596, at *6. Because Abrams' claims stem from alleged netback deductions of post-production costs, their breach of contract claims cannot be sustained, even given their allegations that such deductions were unjust, unreasonable, or wrongful.

The relevant provision in *Ahern* does not contain the "at the wellhead" language like in *Abrams*, but the language of the lease allows for the deduction of post-production costs. The provision states: "ROYALTY PAYMENT – On oil and gas, along with all hydrocarbon and non-hydrocarbon substances produced in association therewith, (except storage gas) LESSEE shall deliver to LESSOR, as royalty one eight [sic] (1/8th) of the gross proceeds realized by LESSEE for that produced and marketed off the leased premises." (Dkt. 4:16-CV-1347, Doc. 46, ¶ 117) (emphasis added). *Kilmer* recognizes that "[a]lthough the royalty is not subject to costs of production, usually it is subject to costs incurred after production." 990 A.2d at 1157. Deduction of post-production costs are appropriate when the lease includes language, similar to here, allowing royalties to be based on "proceeds realized by Lessee." *See Slamon v. Carrizo (Marcellus) LLC*, 654 F. Supp. 3d 405, 433 (M.D. Pa. 2023), *aff'd sub nom*, *Slamon v. Carrizo (Marcellus) L.L.C.*, No. 23-1394, 2024 WL 4602673 (3d Cir. Oct. 29, 2024) (holding that post-production costs are properly deducted when the royalties are based on "the price paid to Lessee"). Pennsylvania law allows for such deductions and does not impose a "reasonableness" standard in deciding them. *See Kilmer*, 990 A.2d at 1149 & n.3, 1158 (citing 30 C.F.R. § 206.151). Accordingly, Plaintiffs' breach of contract claim cannot stand as a matter of law and is **DISMISSED**. *See Coastal Forest*, 2021 WL 1894596, at * (dismissing a breach of contract claim where lease provisions expressly and unequivocally call for the calculation of royalties "at the wellhead."

**2. Plaintiffs' Conversion claim is dismissed.**

Access Defendants argue that Plaintiffs fail to "allege identifiable funds that have been converted."[6] (Dkt. 4:16-CV-1346, Doc. 167, at 30; Dkt. 4:16-CV-1347, Doc. 168, at 30). Conversion is the "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 776 (M.D. Pa. 2008) (quoting *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995)); *see also Gottesfeld v. Mechanics and Traders Ins. Co.*, 173 A.2d 763, 766 (Pa. Super. Ct. 1961). "Money may be the subject of a conversion only where the plaintiff had a property interest in the money at the time of the alleged conversion." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 11-CV-2379, 2013 WL 3973975, at *21-22 (M.D. Pa. July 31, 2013).

"[A] plaintiff may not ordinarily recover for the tort of conversion for a breach of duty that simply restates a contractual obligation." *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 277 (W.D. Pa. 2021). Further, "a claim for conversion cannot stand when there is a contract between the parties that governs the same disputed funds." *Scott v. PNC Bank, Nat'l Ass'n*, 785 F. App'x 916, 920 (3d Cir. 2019). Plaintiffs' conversion claim stems directly from their allegation that "Defendants wrongfully and intentionally caused unauthorized or artificially inflated and unreasonable deductions to be taken from royalties otherwise payable to Plaintiffs." (Dkt. 4:16-CV-1346, Doc. 45, ¶ 312; Dkt. 4:16-CV-1347, Doc. 46, ¶ 288). Plaintiffs' leases govern these disputed funds. (Dkt. 4:16-CV-1346, Doc. 45, ¶ 314; Dkt. 4:16-CV-1347, Doc. 46, ¶ 290). Thus, because the converted funds are directly related to the contracts at issue in this case, and because arguable plaintiffs never had a right in the monies

[6] Plaintiffs allege a claim of conversion against only Access Defendants.

at issue, Plaintiffs do not have a cause of action for conversion. Accordingly, Plaintiffs' Fifth Cause of Action, their claim for conversion, is **DISMISSED**. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 310-21; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 286-97); *see Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 495 (E.D. Pa. 2019) (dismissing conversion claim and stating: "[w]here 'the success of the conversion claim depend[s] entirely on the obligations as defined by the contract,' the conversion claim is barred" by the gist of the action doctrine.) (quoting *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003))).

**3. Plaintiffs' State Law Civil Conspiracy claim fails.**

Access Defendants argue that Plaintiffs fail to state a claim for civil conspiracy.[7] (Dkt. 4:16-CV-1346, Doc. 167, at 31; Dkt. 4:16-CV-1347, Doc. 168, at 31). Under Pennsylvania common law, civil conspiracy requires that two or more conspirators reached an agreement to commit an unlawful act or perform a lawful act by unlawful means. *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979); *Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. 1985). Additionally, a plaintiff must show an overt act and actual legal damage. *Phillips v. Selig*, 959 A.2d 420 (Pa. Super. 2008) (internal citations omitted). To allege a conspiracy claim, Plaintiffs must also allege malice, which requires a showing that the sole purpose of the conspiracy was to injure Plaintiffs without justification. *Doltz v. Harris & Assoc.*, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003)

Plaintiffs allege Defendants, acting with knowledge that artificially inflated gathering and transportation fees would be passed-on to Plaintiffs and deducted from their royalties, engaged in a scheme to defraud and deprive Plaintiffs of their duly owed royalty payments by

---

[7] Plaintiffs allege a claim of civil conspiracy against only Access Defendants and does not address this claim in their briefs.

manipulating and misrepresenting certain post-production costs incurred and charged. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 322-28; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 298-304). In other words, Plaintiffs allege Defendants engaged in a conspiracy to commit the tort of conversion. However, because Plaintiffs' conversion claim is dismissed as insufficiently pled, as discussed *supra*, Plaintiffs' civil conspiracy claim cannot survive. Plaintiffs' Sixth Cause of Action for civil conspiracy is therefore **DISMISSED**. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 322-28; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 298-304).

### 4. Plaintiffs' Claims for Legal/Equitable Accounting are dismissed.[8]

The amended complaint asserts a claim for accounting. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 349-53; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 329-35). "In Pennsylvania, the right to an accounting at law is a form of relief that attaches only where the defendant has breached a valid contract with the plaintiff." *Lightman v. Marcus*, CIV.A. 12-97, 2012 WL 1344378, at *4 (E.D. Pa. Apr. 18, 2012) (citation and quotation omitted) (emphasis added). To establish entitlement to a legal accounting, Plaintiffs must allege a valid contract under which the defendant received monies in a capacity which imposed upon it a legal obligation to account to the plaintiffs for the monies received and a breach of defendant's duty under the contract. *Haft v. United States Steel Corp.*, 499 A.2d 676 (1985). "[A] legal accounting is not a separate claim but rather a form of relief that accompanies a formal breach of contract claim." *Zamias v. Fifth Third Bank*, No. 3:17-CV-153, 2018 WL 355462, at *17 (W.D. Pa. Jan. 9, 2018).

Because Plaintiffs' breach of contract claim is dismissed, their claim for legal accounting cannot stand. Accordingly, Plaintiffs' Eighth Cause of Action, their claim for

---

[8] Access does not argue this issue because it is not a Lessee Defendant.

accounting, is t **DISMISSED**. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 349-53; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 329-35).

**5. Plaintiffs' Unjust Enrichment claim is dismissed.**

Plaintiffs bring an unjust enrichment claim against only Access Defendants, claiming that Plaintiffs have "directly or indirectly conferred benefits on Defendants" as a result of "deduction of excessive and artificially inflated post-production costs from Plaintiffs' royalties[.]" (Dkt. 4:16-CV-1346, Doc. 45, ¶ 375; Dkt. 4:16-CV-1347, Doc. 46, ¶ 338). Access Defendants moves to dismiss this claim, pointing to the "remoteness of Plaintiffs' alleged injuries from any alleged wrongdoing[.]" (Dkt. 4:16-CV-1346, Doc. 167, at 32; Dkt. 4:16-CV-1347, Doc. 168, at 32).

Pursuant to Pennsylvania law, the elements of unjust enrichment are: "(1) conferring a benefit on defendant; (2) defendant's knowledge of the benefit; and (3) circumstances are such that defendant's retention of that benefit would be unjust." *Burrell v. Staff*, 60 F.4th 25, 50 (3d Cir. 2023). An unjust enrichment claim requires more than a showing that the defendant may have benefitted in some way from the disputed conduct. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would unconscionable for her to retain." *Sovereign Bank*, 533 F.3d at 180 (internal quotations omitted).

Per the Court's discussion regarding the royalty provisions *supra*, post-production costs can be deducted from royalty payments. *Kilmer*, 990 A.2d at 1157-58. The Court agrees with Access Defendants' argument that Plaintiffs' overlook the fact that they received gathering services in exchange for payment of post-production costs when they argue unjust

enrichment. (Dkt. 4:16-CV-1346, Doc. 167, at 32; Dkt. 4:16-CV-1347, Doc. 168, at 32). *See Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) (affirming dismissal of unjust enrichment claim after ruling that plaintiff cannot proceed his tort claims due to "the remoteness of plaintiffs' injuries from defendants' wrongdoing."). Accordingly, Plaintiffs' claim of unjust enrichment is **DISMISSED**. (Dkt. 4:16-CV-1346, Doc. 45, ¶¶ 373-76; Dkt. 4:16-CV-1347, Doc. 46, ¶¶ 336-39).

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, Plaintiffs had ample opportunity to rectify the deficiencies, the amended complaint mostly repleads the original complaint's conclusory allegations, and further leave to amend is not warranted. *See Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 654 (3d Cir. 1998) (affirming denial of leave to amend where "plaintiff's proposed Second Amended Complaint primarily seeks to replead facts and arguments that could have been pled much earlier in the proceedings"), *abrogated on other grounds by Forbes v. Eagleson*, 228 F.3d 471, 483 (3d Cir. 2000); *see also Vincent C. v. Pennsbury Sch. Dist.*, No. CV 24-06340-PAC, 2025 WL 2524221, at *14 (E.D. Pa. Sept. 2, 2025) (finding that further amendments to the complaint would be inequitable after plaintiff failed to "substantively change[] *any* of the facts or legal theories of

his claims") (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)). Accordingly, the Court **DENIES** leave to amend.

## V. CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are **GRANTED**. (Dkt. 4:16-CV-1346, Doc. 162, Doc. 164, Doc. 166; Dkt. 4:16-CV-1347, Doc. 163, Doc. 165, Doc. 167). Plaintiffs' amended complaint is **DIMISSED**. (Dkt. 4:16-CV-1346, Doc. 45; Dkt. 4:16-CV-1347, Doc. 46). Plaintiffs are extended leave to file an amended complaint within thirty days of this Memorandum and accompanying Order, on or before **Wednesday, October 28, 2026**.

An appropriate Order follows.

**Dated: September 29, 2026**

**BY THE COURT:**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**